UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-21618-CIV-MOORE/MCALILEY

JULIO A. UZAT,

      Plaintiff,

v.

CAROLYN W. COLVIN,
Commissioner of Social Security
Administration,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

      Pending before the Court is Plaintiff's Motion for Summary Judgment [DE 27], and Defendant's Motion for Summary Judgment. [DE 30]. This matter was referred to me by the Honorable K. Michael Moore and is fully briefed. [DE 3]. For the reasons set forth below, I respectfully recommended that Plaintiff's Motion for Summary Judgment be granted and Defendant's Motion for Summary Judgment be denied.

**I.    Overview**

      Plaintiff has a history of mental illness, physical ailments, and substance abuse. On April 27, 2011, he applied for disability insurance benefits and supplemental security income, claiming he has been disabled since April 2, 2010. Tr. 301-10.[1] Plaintiff's application was denied initially and on reconsideration. Tr. 122-39, 145-55. On April 10,

_____

[1] Citations to the transcript of proceedings before the Social Security Administration, which was filed at DE 21, are to "Tr. [#]."

2012, Plaintiff filed a request for a hearing by an Administrative Law Judge ("ALJ"). Tr. 156. The ALJ held two hearings, on February 12 and June 4, 2014. Tr. 38-121. Plaintiff testified at both hearings. Jainine Seelig, a vocational expert, also testified at the first hearing, and Nathan Strahl, a medical expert, and Tricia Oates, a vocational expert, testified at the second hearing. Tr. 40, 74.[2]

On June 23, 2014, the ALJ issued a written decision that found that Plaintiff was not under a "disability" as defined in the Social Security Act. Tr. 13-37. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on March 11, 2015, Tr. 1-6, rendering the ALJ's decision the final decision of the Commissioner. Plaintiff now asks this Court to remand the matter to the ALJ either for an award of benefits, or alternatively, for reconsideration of Plaintiff's claim. [DE 27, p. 27].

## II. Proceedings before the Commission

### A. Plaintiff's testimony

#### i. The first hearing

At the February 2014 hearing, Plaintiff testified that he has been homeless for three or four years. Tr. 82. Before that, he had lived in homeless shelters, although he had twice been asked to leave because he was violent. Tr. 82-3. On a typical day, Plaintiff eats breakfast at a church, attends an Alcoholics Anonymous (AA) meeting, figures out where he can find dinner, and returns to the area where he sleeps. Tr. 84. He stays at the AA meetings all day but does not interact with the people there. Tr. 107-9. He was kicked

---

[2] The transcript of the hearing misidentifies Dr. Strahl as "Dr. Straw." Tr. 40, 259.

out of a meeting once after getting into a fist fight, but he apologized and they let him return. Tr. 109.

Plaintiff has a history of cocaine abuse, but at the time of the hearing he had not used cocaine for two weeks. He testified that he gets less angry when he is not using cocaine. Tr. 80, 95. In the past, Plaintiff has taken psychiatric medications, which minimized his hallucinations, violence, and loss of temper. Tr. 99. He stated that the medications made him feel "a lot better." *Id.* However, he had to discontinue treatment because he does not have any money. *Id.* He does not have medical insurance and is on a waiting list at Camillus House, a homeless shelter, for psychiatric treatment. Tr. 95-6, 98. Plaintiff states he takes his medications regularly when they are available. Tr. 96.

Plaintiff has been in trouble with the law for threatening people and stealing plastic bags, which he sells and uses to cover his living area. Tr. 84. He becomes angry when people make fun of him because he does not have teeth and is overweight. Tr. 85. Plaintiff is 5'9" and weighs 315 pounds. Tr. 106. He has punched a window when he was angry. Tr. 85. Plaintiff testified that when people make him angry, he feels like hurting them. Tr. 86. He hurt his mother when he "was hearing voices, and she didn't want me to leave." *Id.* The voices told him to kill himself and his mother. Tr. 100. He was not using cocaine when this happened. Tr. 99-100.

Plaintiff has harmed himself. In 2010, he stabbed himself in the hand while on the job because he did not want to be at work anymore. Tr. 87. In another incident, he

stabbed himself in the leg because he did not want to go to court. *Id.* Plaintiff was hospitalized in the early 1990's for attempting to kill himself and another. Tr. 88.

Plaintiff has been fired from jobs for poor attendance, stealing food, and not getting along with his coworkers. Tr. 88-89. He has called in sick or failed to go to work when he got stressed from paperwork, because he is not good at writing. *Id.* Plaintiff attended special education classes and left school in ninth grade. Tr. 100-1. Plaintiff stated that if a supervisor criticized him, he would react violently; if a coworker criticized him, he would probably swear at them. Tr. 90. Plaintiff testified that, in a work situation, he has difficulty maintaining his focus. *Id.* He also has trouble handling money; he cannot properly calculate change and he loses his money. Tr. 91.

Plaintiff described his last job, at a flea market; it lasted a couple weeks before he was fired. He worked three to four days a week for approximately eight hours a day. Tr. 93-5. Part of his job was to prevent certain people from dumping garbage; in the process of doing this, Plaintiff became physically aggressive and the police were called. Tr. 94.

Plaintiff is physically able to care for his personal needs, but has frequently encountered problems due to his reluctance to shower. Tr. 91-2. At one job, a supervisor asked him to shower, and he was kicked out of a homeless shelter for not bathing regularly. Tr. 92. He has no social life. *Id.*

Plaintiff has pain and swelling in his right knee; this has been true since he had surgery on that knee five years before. He state that he can stand for 10 to 15 minutes at a time, but cannot squat and probably cannot kneel. Tr. 92-3. He has difficulty breathing

because of asthma, and can walk about a block without stopping. Tr. 93. Plaintiff also testified he has severe pain in his shoulder when he lifts his arm over his head. Tr. 97-8. He has not had any treatment for his shoulder because he cannot pay for it. Tr. 97. Plaintiff testified he suffers from seizures once or twice a week. Tr. 110.

### ii.  The second hearing

At the June 4, 2014 hearing, Plaintiff testified that he had become upset while waiting for his March 10, 2014, consultative examination with Dr. Vivian Gonzalez-Diaz. Plaintiff explained that he was given a skills test by Dr. Gonzalez-Diaz' assistant, and then had to wait for hours to meet with the doctor. Tr. 44-5. He became agitated because if he did not return to the Miami Rescue Mission by a certain time, he would not receive dinner, so he kept inquiring as to when she would be available. Tr. 45-49. According to Plaintiff, when Dr. Gonzalez-Diaz arrived, she yelled at him and he told her to "F off." Tr. 49.

Since the first hearing Plaintiff had a seizure that resulted in him falling and being punctured by a nail. He went to the hospital for treatment, but left after waiting several hours. Tr. 49-50. Plaintiff testified that he had last used cocaine in February of that year, but had been drug free since then. Tr. 52. His most recent drug use before that was in November or December 2013. *Id.* Plaintiff explained he would take drugs "if somebody had some, because sometimes when you're on the street, you're hungry. And that takes away the food – the craving for food." Tr. 52. Plaintiff testified that he continues to spend the majority of his days at AA meetings. Tr. 53.

### B.   Medical Expert's Testimony

Dr. Nathan R. Strahl, a psychiatrist, appeared at the June 4, 2014 hearing as a medical expert. He heard Plaintiff's testimony and then testified himself. Tr. 39, 259-60.[3] Dr. Strahl summarized the available medical evidence, which documents that Plaintiff has bipolar disorder, he has abused cocaine, and has been diagnosed with antisocial personality disorder. Tr. 54-5.[4]

Dr. Strahl noted that the medical evidence shows Plaintiff has significant hygiene issues. He often refuses to shower even though he knows it is expected. Tr. 56. Plaintiff also does not like to take medication. *Id.* Dr. Strahl opined that, with Plaintiff's history of substance abuse and poor compliance with treatment for his mental illnesses, Plaintiff has marked limitations in activities of daily living and socialization, moderate limitations in pace, concentration and persistence, and moderate to marked decompensation. Tr. 59-60. If Plaintiff did not abuse illegal substances *and* received mental health treatment Dr. Strahl opined that Plaintiff would have mild limitations in activities of daily living, moderate to marked limitations in socialization, mild limitations in concentration, persistence and pace, and mild decompensation. Tr. 60.

Dr. Strahl admitted that he could not identify any specific evidence in the record to support his opinion regarding the extent to which Plaintiff's limitations would improve if Plaintiff was compliant with his medications and avoided substance abuse. Tr. 61.

---

[3] The record does not contain any evidence that Dr. Strahl reviewed Plaintiff's testimony from the first hearing before he offered his opinion.

[4] As noted, Plaintiff also has various physical ailments, but those ailments and their effect on the disability determination are not in dispute and therefore they are not addressed here.

### C.      Vocational Experts' Testimony (VE)

At the first hearing, the ALJ asked the VE to offer her opinion about two hypothetical claimants, the difference between the two being the mental limitations. The first such claimant:

> can only work at the light level . . . will be able to lift and/or carry 20 pounds occasionally, 10 pounds frequently; in terms of standing and/or walking he will be able to do six hours total in an eight hour workday; sitting will be also six hours total in an eight hour workday; pushing and pulling will the same amount of weight as in lifting and/or carrying. He will also be limited to occasional climbing of ramps or stairs; balancing, stooping, kneeling, crouching, or crawling. He will not be able to perform any activities including climbing ladders, ropes, or scaffolds; working proximity to moving machinery or working in high exposure places. He will also be limited to occasional exposure to extreme cold, extreme heat, wetness or humidity. Or occasional exposure to fumes, odors, dust, gases, et cetera. *Mentally he will be able to perform simple, routine, repetitive tasks; also he will be able to understand, remember, and carry out simple instructions. He will be limited also to jobs that require only occasional interaction with the public and coworkers.*

Tr. 114-5 (emphasis added to mental limitations). The VE testified that this hypothetical claimant would not be able perform Plaintiff's past relevant work, which the VE classified as heavy, but would be able to perform some jobs available in the local, regional and national economy that are light work. Tr. 115-6.

The ALJ then described the second hypothetical claimant, with the same physical limitations as the first, but with these mental limitations:

> Unable to deal with stress common to work environments. For example, complete tasks in a timely matter, particularly production goals . . . . He will be unable to do the following on a sustained basis:  Understand, remember, and carry out even very short, repetitive instructions, or interact with coworkers and supervisors. Also he will unable to respond to change in the work setting to take appropriate precautions.

Tr. 117. The VE testified that this hypothetical claimant would not be able to perform any job. Tr. 118.

Responding to questioning from Plaintiff's attorney, the VE testified that if Plaintiff could meet the exertional requirements for a full range of light work, but required: 1) assistance in the areas of concentration and persistence in order to stay on task, 2) less than occasional contact with supervisors, coworkers, and the public, and 3) additionally he would be off task for 20% of the day, Plaintiff would not be employable. Tr. 118-9. Nor would Plaintiff be employable if he could perform the exertional demands of light work but was limited to work: 1) that involves simple, routine and repetitive tasks, 2) where he has less than occasional interaction with his supervisor, minimal interaction with public and coworkers and minimal changes in the work setting, and 3) with no production quotas, where he is off task 20% of the day and misses at least three days a month. Tr. 119-20.

At the second hearing, the ALJ and Plaintiff's counsel presented essentially the same hypotheticals to the VE, who gave the same opinions. Tr. 63-70.

**D.    ALJ's Decision**

On June 23, 2014, the ALJ issued his decision that Plaintiff is not disabled. Tr. 13-37. To reach that conclusion the ALJ first found that Plaintiff had not engaged in substantial gainful activity since April 2, 2010. Tr. 19. He next found Plaintiff has the severe impairments of seizure disorder, obesity, asthma, learning disorder, bipolar disorder, personality disorder, and substance abuse disorder, but he does not have an

impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 19.

The ALJ then considered Plaintiff's Residual Functional Capacity (RFC) in two ways: first, accounting for his substance abuse disorder, and then excluding that disorder from his assessment. In short, the ALJ found Plaintiff disabled when he factored in Plaintiff's substance abuse, but when he excluded it, the ALJ concluded that Plaintiff is not disabled.

As for the first RFC assessment, the ALJ found that when all of Plaintiff's impairments are considered (including his substance use disorder), Plaintiff had the Residual Functional Capacity (RFC) to perform less than the full range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). Tr. 21. That RFC includes first, the findings regarding Plaintiff's physical, or exertional, limitations:

> [Plaintiff] could lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently. He could sit for six hours total in an eight-hour workday. He could stand and/or walk for six hours total in an eight-hour workday. He could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. He could never climb ladders, ropes, or scaffolds. He could tolerate occasional exposure to extreme cold, extreme heat, wetness, humidity, or pulmonary irritants such as fumes, odors, dust, gases, etc. He could never work in close proximity to moving machinery or work in high exposed places.

*Id.* The RFC also included these mental limitations:

> [Plaintiff] would be unable to deal with stress common to work environments, such as completing tasks in a timely manner, particularly production goals and quotas. He would also be unable to do the following on a sustained basis: understand, remember, and carry out even very short and repetitive instructions; interact with co-workers and supervisors; respond adequately to changes in routine work setting; and take appropriate precautions.

*Id.* The ALJ found that these limitations, combined, left Plaintiff disabled. Tr. 22.

9

Next, the ALJ reevaluated Plaintiff's RFC excluding his substance abuse disorder. That RFC included the same physical limitations included in the first RFC, but found that without substance abuse, Plaintiff would have these different mental limitations:

> Mentally, the claimant retains the ability to perform simple routine and repetitive tasks. He is able to understand, remember, and carry out simple instructions. He would be limited to work that requires only occasional interaction with crowds, the public, and co-workers

Tr. 25-6. Applying this RFC, the ALJ concluded that Plaintiff would not be disabled. Tr. 30. Specifically, the ALJ found that although Plaintiff would not be able to perform the full range of light work, there are jobs he could do. The ALJ thus concluded that the substance abuse disorder was a material contributing factor to Plaintiff's disability determination. *Id.* Having found this, the ALJ determined that under the applicable regulations Plaintiff is not disabled. Tr. 18, 30.

In addition to his testimony, Plaintiff provided medical records. The Court has carefully reviewed the entire record in this action. Rather than summarize all the evidence, I review that evidence that is relevant to the issues discussed below.

### iii.   Analysis

In evaluating a claim for disability benefits, the ALJ must follow the five steps set forth in 20 C.F.R. §§ 416.920(a) and 404.1520.

1.   Is the claimant performing substantial gainful activity? If not, the ALJ next determines;

2.   Does the claimant have one or more severe impairments? If the claimant does, the ALJ next considers;

3.   Does the claimant have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the

claimant is disabled; if not, the ALJ must determine the claimant's RFC; and then determine;

4.     Based on the RFC, can the claimant perform his past relevant work? If so, he is not disabled. If he cannot perform his past relevant work, the ALJ must finally determine;

5.     Whether, based on his age, education, and work experience, and the RFC, can the claimant perform other work of the sort found in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled and entitled to benefits.

*Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

Important here is the regulatory requirement that a claimant is not disabled if drug or alcohol abuse is a "contributing material factor" to the disability determination. 42 USC § 423(d)(2)(C). "The key factor in determining whether drug addiction or alcoholism is a contributing factor material to the determination of a disability . . . is whether the claimant would still be found disabled if he stopped using drugs or alcohol." *Doughty v. Apfel*, 245 F.3d 1274, 1279 (11th Cir. 2001).

When reviewing the ALJ's decision regarding disability, the Court must determine whether the ALJ applied the correct legal standard and whether substantial evidence supports his findings of fact. *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips*, 357 F.3d at 1240, n. 8 (citation omitted). The substantial evidence standard does not permit a reviewing court to only consider those parts of the record that support the ALJ; the court must view the entire record and also consider evidence in the record which detracts from the evidence relied on by the ALJ. *Chester v. Bowen*, 792

F.2d 129, 131 (11th Cir. 1986); *Mackie v. Astrue*, No. 1:07-cv-00098-MP-WCS, 2008 WL 719210, at * 1 (N.D. Fla. Mar. 11, 2008).

While the Court applies a presumption in favor of the ALJ's finding of fact, no such presumption applies to the ALJ's legal conclusions. Thus, the Court must reverse if the ALJ incorrectly applied the law, or if the decision fails to provide the court with sufficient reasoning to determine whether the ALJ properly applied the law. *Perez v. Comm'r of Soc. Sec.*, No. 6:06-CV-1648-ORL-19KRS, 2008 WL 191036, * 5 (M.D. Fla. Jan. 22, 2008). The ALJ's failure to specify the weight given to evidence contrary to his decision, or failure to give the reason for discrediting evidence, is reversible error. *Hart v. Astrue*, No. 3:10-CV-531-J-TEM, 2011 WL 4356149, * 5 (M.D. Fla. Sept. 19, 2011). The Court is authorized to enter a judgment affirming, modifying, or reversing the decision of the ALJ, with or without remand. *Perez*, 2008 WL 191036, * 5; 42 U.S.C. § 405(g).

Some of the ALJ's findings are not in dispute. There is no dispute that Plaintiff has not engaged in substantial gainful employment since April 2, 2010. The parties also do not challenge the ALJ's determination of Plaintiff's severe impairments under step two, or that these impairments do not meet or medically equal any of the listed impairments (step three). Finally, neither party disputes the RFC that incorporates Plaintiff's substance abuse, or the ALJ's conclusion that, applying RFC, Plaintiff is disabled. Plaintiff's challenge focuses solely on the ALJ's determination of the latter RFC (that excludes substance abuse), and the ALJ's conclusion that that RFC leads to the finding that

Plaintiff is not disabled. In particular, Plaintiff challenges: 1) the ALJ's assessment of certain medical opinions, and 2) the ALJ's determination that Plaintiff is not wholly credible.

### A.      The medical opinions

The RFC is an assessment by the ALJ of a claimant's ability to work despite his impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). In determining the RFC, the ALJ must consider all the relevant evidence. *Id.* The focus of the RFC is the doctors' evaluations of the claimant's condition and the medical consequences thereof. *Tillman v. Comm. of Soc. Sec.*, Case No. 6:12-cv-969-Orl-22DAB, 2013 WL 4014979, *3 (Aug. 6, 2013 M.D. Fla). In crafting the RFC, "[t]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm. of Social Security*, 631 F.3d 1176, 1179 (11th Cir. 2011). An ALJ's failure to state with particularity the weight given to each medical opinion is reversible error. *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (citation omitted).

Although he does not say so explicitly, the ALJ appears to rely on the opinions of Dr. Nathan Strahl, the medical expert at the hearing, and two consultative physicians, Dr. Vivian Gonzalez-Diaz and Dr. Diana Davidson, in determining Plaintiff's RFC absent substance abuse. Tr. 28-9.

### i.      Dr. Strahl

In his decision, the ALJ relies on Dr. Strahl's opinion that, if Plaintiff would "take medication [for his mental illnesses] and stop substance use, he would be able to perform simple routine, repetitive tasks." Tr. 28. Dr. Strahl testified, however, that he could not

identify any specific evidence in Plaintiff's medical records that supports this opinion. Tr. 61. The ALJ ignores this admission. More significantly, the ALJ does not address the fact that Dr. Strahl's opinion is premised on dual assumptions: that Plaintiff discontinue all use of cocaine *and* take medication for his mental illness.[5]

The ALJ's failure to address these aspects of Dr. Strahl's opinion is compounded by the ALJ's failure to assign any weight to Dr. Strahl's opinion, as required by *Winschel*. 631 F.3d at 1179. These errors leave this Court without sufficient reasoning to determine whether the ALJ properly applied the law in his consideration of Dr. Strahl's opinions. *Perez*, 2008 WL 191036, * 5.[6]

### ii.   Dr. Davidson

Dr. Davidson made a psychiatric examination of Plaintiff on July 29, 2011, at a time when Plaintiff had not used cocaine for two months. Tr. 445-7. Dr. Davidson observed that Plaintiff was disheveled and malodorous, due to poor personal hygiene and grooming. Tr. 447. Plaintiff told Dr. Davidson that he "is afraid to shower because water

---

[5] While refusal to follow a prescribed medical treatment without good cause would preclude a finding of disability, medical noncompliance due to the claimant's inability to afford treatment, would not prevent an award of benefits. The record contains significant evidence that Plaintiff could not afford medical treatment. Tr. 51, 53, 96-99, 466. The ALJ does not address whether Plaintiff's failure to take medication was due to his inability to pay

[6] Plaintiff makes two other arguments about Dr. Strahl. First, that he was biased and unqualified. [DE 27, pp. 12-5]. Plaintiff did not raise any objections to Dr. Strahl's qualifications at the hearing [Tr. 43], and therefore has waived this argument. *Biles v. Colvin*, Case No. 4:15cv488-MW/CAS, 2016 WL 3876443, * 10 (N.D. Fla. June, 28, 2016), *adopted at* 2016 WL 3869878 (July 15, 2016) (failure to object to an expert at a hearing before the ALJ results in a waiver of Plaintiff's right to challenge that expert's qualifications before the district court). Second, that Dr. Strahl improperly offered his opinion that Plaintiff's substance abuse is a material factor to the disability determination and that the ALJ improperly relied on this opinion. I do not need to read the record to support this conclusion.

causes things to rust, and he is afraid it will ruin his skin." Tr. 446. Dr. Davidson found

Plaintiff to have delusional thought content, and to be impatient, irritable and verbally

aggressive towards her staff, although he cooperative in the examination. Tr. 447. His

social skills were immature and child-like. *Id.*

> Dr. Davidson opined that Plaintiff:

> Due to psychiatric impairment and immaturity is likely to have problems
> regularly attending to a routine and maintaining a schedule. His judgment is
> markedly limited by psychiatric impairments and he is likely to have
> problems making appropriate decisions. He appears to be capable of
> learning simple new tasks. He appears to have marked difficulty relating to
> and interacting appropriately with others, and appears likely to become
> involved in frequent conflicts, particularly in a vocational setting. He does
> not appear to be capable of dealing appropriately with stress. Results of the
> examination appear to be consistent with psychiatric and cognitive
> problems, and thus may significantly interfere with the claimant's ability to
> function on a daily basis.

Tr. 448-9. In short, after evaluating Plaintiff at a time when he was not using cocaine, Dr.

Davidson found him to have significantly more limitations than the ALJ found in his non-

substance abuse RFC.

Dr. Davidson also stated that Plaintiff required treatment for his psychiatric

symptoms and substance abuse, which she hoped would provide symptom relief and

maximize his abilities. Tr. 449. Notably, like Dr. Strahl, Dr. Davidson premised her

opinion regarding the effectiveness of treatment on the assumption that Plaintiff would

receive treatment for his psychiatric symptoms, in addition to avoiding substance abuse.

In a conclusory manner, and without explanation, the ALJ accorded Dr.

Davidson's opinion some weight "to the extent that it is consistent with the claimant's

residual functional capacity without the substance abuse."[7] Tr. 29. The ALJ did not address the fact that Dr. Davidson's opinions were based on her examination of Plaintiff when he was not using drugs. The ALJ also did not acknowledge that, like Dr. Strahl, Dr. Davidson opined that Plaintiff required treatment for his psychiatric symptoms, apart from the drug abuse disorder, in order to maximize his abilities. *Id.*

Without an explanation by the ALJ of his reasoning, the Court cannot determine if he properly considered Dr. Davidson's opinions. This matter must be remanded to the ALJ to address these issues. *Hart,* 2011 WL 4356149, * 6 ("Remand is proper, even when it is possible the ALJ considered and rejected the medical opinion in question, yet without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence.") (quotation marks and citation omitted).

### iii.    Dr. Vivian Gonzalez-Diaz

Dr. Gonzalez-Diaz examined Plaintiff on March 10, 2014. Tr. 564. At that time, Plaintiff had not abused drugs for about a year. Tr. 567-8. The doctor's report notes that Plaintiff had an unpleasant smell. Tr. 565. Plaintiff reported that he has problems controlling his anger and he tends to hit people and things. Tr. 565. He has also engaged in self-harm. Tr. 565. Plaintiff admitted occasionally hearing voices. Tr. 568.

Dr. Gonzalez-Diaz diagnosed Plaintiff with "Bipolar I Disorder Depressed Type with Psychotic Features . . . Cocaine Dependence in Alleged Full Sustained Remission," Learning Disorder (NOS) and Antisocial Personality Disorder. Tr. 570. She opined that

---

[7] This qualification does not appear to mean anything, beyond circular reasoning

16

Plaintiff had moderate limitations in his ability to make judgments on simple work-related decisions, to understand, remember or carryout complex instructions, and to make judgments on complex work-related decisions. Tr. 562. Dr. Gonzalez-Diaz found Plaintiff had marked limitations in his ability to act appropriately with the public, supervisors and co-workers, and marked limitations in his ability to respond appropriately to usual work situations and to changes in routine work settings. Tr. 563.

Having made these findings, notably at a time where Plaintiff had not been using cocaine for about a year,[8] Dr. Gonzalez-Diaz was of the opinion that Plaintiff's social limitations were significantly more severe than those set forth in the ALJ's non-substance abuse RFC. Without any explanation, the ALJ gave this portion of Dr. Gonzalez-Diaz's opinion some weight "to the extent that it is consistent with the claimant's residual functional capacity without the substance abuse."[9] Tr. 29. By contrast, the ALJ gave "great weight" to Dr. Gonzalez-Lopez' determination of Plaintiff's IQ, again without explanation. Tr. 21. The ALJ does not state any reasons for assigning different weights to these two portions of Dr. Gonzalez-Lopez' opinions.

Again, the ALJ has not provided the Court with sufficient reasoning to allow the Court to determine whether he properly applied the law when he considered Dr. Gonzalez-Diaz' opinions in crafting the non-substance abuse RFC.

---

[8] Again, the ALJ does not address the fact that this doctor found Plaintiff to have more severe limitations than did the ALJ, *at a time when Plaintiff was not using drugs.*

[9] Again, it is not clear what this qualification means.

17

### iv. The ALJ erred in not weighing the opinions of Drs. Marban, Rowan, and Rosenberg

In addition to failing to weigh Dr. Strahl's opinion, the ALJ failed to assign any weight to the medical opinions of Drs. Marban, Rowan, and Rosenberg.

Dr. Elsa Marban, a clinical psychologist, examined Plaintiff when he was not using cocaine. Tr. 416. She found that Plaintiff had functional limitations in the area of concentration and persistence to stay on task in that he may require on-going prompts or assistance, and that he may not accept instruction and respond appropriately to criticism from supervisors. Tr. 420. She also found that Plaintiff may have difficulties concentrating on work activities, be unable to grasp abstract concepts, may have difficulties staying on task, may have difficulties relating appropriately with co-workers or supervisors, may respond inappropriately to work/social situations, cannot work around certain substances and in certain environments, and has difficulties performing mathematical computations. Tr. 420. In sum, Dr. Marban found that Plaintiff was more limited in the area of concentration and persistence and social interactions than are incorporated into the non-substance abuse RFC.

Dr. Jill Rowan, a State agency reviewing psychologist, found that Plaintiff has had a chronic problem with anger and aggression, and that he should be placed away from others and the public. Tr. 467. Although she found that he could carry out simple and routine tasks and adjust to changes in the work place, she opined that he should work at a site with low social demands. Tr. 467. Thus, Dr. Rowan found that Plaintiff had greater

limitations on his ability to interact socially than those incorporated into the non-substance abuse RFC.

Dr. Leigh Rosenberg, also a State agency reviewing psychologist found that Plaintiff could do "routine, repetitive tasks in a structured work environment which would not involve social interaction." Tr. 494. She also noted that Plaintiff's functioning would likely improve "with adherence to recommended psychiatric intervention and abstinence from the use of non-prescribed drugs." *Id.* Thus, like Dr. Strahl and Dr. Davidson, Dr. Rosenberg's opinion was based on the dual presumptions of psychiatric treatment and abstinence from substance abuse. Dr. Rosenberg also found that Plaintiff had greater social limitations than those provided in the non-substance abuse RFC.

Because the ALJ failed to weigh the opinions of Drs. Marban, Rowan and Rosenberg, the Court cannot determine if he properly considered these opinions in reaching his conclusions, or if he overlooked them. This is another reason why this matter should be remanded to the ALJ. *Hart,* 2011 WL 4356149, * 6.

**B.    Plaintiff's credibility**

At both hearings, Plaintiff testified regarding the severity of his symptoms. The ALJ found that "the claimant is credible concerning the following symptoms and limitations: aggressive behavior and poor hygiene, but not to the point of been [sic] disabled." Tr. 22. The ALJ also found that "the testimony and statements of the claimant regarding persistence, severity, and limiting effect of his impairments are not fully credible." Tr. 29. In support of this finding, the ALJ noted that the "record shows that the claimant was arrested and incarcerated multiple times in the past for charges including

domestic violence, assault, aggravated battery, and grand theft . . . the claimant's history of arrests and incarceration does little to bolster his overall credibility." Tr. 29. Plaintiff challenges this credibility finding. [DE 27, pp. 25-6].

In crafting the RFC, the ALJ must consider a claimant's subjective testimony regarding his symptoms, when there is evidence of an underlying medical condition and (1) "objective medical evidence to confirm the severity of the alleged pain arising from that condition", or (2) the "objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). If a claimant provides testimony regarding his symptoms, the "ALJ must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations. . . ." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation and quotation mark) (applying the *Foote* analysis to claimant's subjective complaints of symptoms).

Here, the ALJ found the Plaintiff's statements regarding the persistence, severity and limiting effects of his mental impairments not fully credible and found that his history of arrests and incarcerations for charges such as domestic violence, aggravated battery, and grand theft did "little to bolster his overall credibility." Tr. 29, 447, 567. Additionally, the ALJ noted that Dr. Vivian Gonzalez-Diaz found that Plaintiff did not "put forth his most effort" during her testing of him. Tr. 28.

An ALJ may consider evidence of malingering and a Plaintiff's criminal history in evaluating his credibility. *Douglas v. Comm'r of Soc. Sec.*, 486 F. App'x 72, 75 (11th Cir.

2012) (holding it is not an error for the ALJ to consider a Plaintiff's criminal history or "crimes of dishonesty"). Because the ALJ clearly articulated his reasons for not finding Plaintiff wholly credible, and those reasons are adequate to support his conclusion, the Court affirms the ALJ's credibility determination.

For these reasons, I recommend that the Court remand this matter for the ALJ to address the following: 1) the weight he gives to each medical opinion and the reasons for that weight; 2) the effect of Plaintiff's noncompliance with psychiatric treatment, separate from his substance abuse disorder, on Plaintiff's limitations; 3) the evidence that the Plaintiff's failure to take prescribed medication is due to his poverty. The ALJ should then, after a full consideration of the developed record, determine Plaintiff's revised non-substance abuse RFC and explicitly state the basis for his determination. Applying the revised non-substance abuse RFC, the ALJ should proceed to step four to determine if Plaintiff is capable of performing any past relevant work, and, if necessary, to step five of the required analysis, to make a final determination of Plaintiff's eligibility for disability benefits.

## IV.    Recommendations

Based on the foregoing, I respectfully recommend that:

Plaintiff's Motion for Summary Judgment [DE 27], be GRANTED in part, and Defendant's Motion for Summary Judgment [DE 30], be DENIED in part, and the matter remanded for proceedings consistent with this report and recommendation.

## V.    Objections

**No later than September 19, 2016**, the parties may file any written objections to this Report and Recommendation with the Honorable K. Michael Moore, who is obligated to make a *de novo* review only of factual findings and legal conclusions that are the subject of objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985), *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989), 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1 (2016).

RESPECTFULLY RECOMMENDED in chambers in Miami, Florida this 7th day of September, 2016.

CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

Copies to:
The Honorable K. Michael Moore
Counsel of record